## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **CHERYL HATFIELD,**<br>      Plaintiff,<br><br>v.<br><br>**FRANK BISIGNANO,**<br>**Commissioner of the Social**<br>**Security Administration,**<br>      Defendant. | **Case No. 5:24-cv-1489-CLM** |

## MEMORANDUM OPINION

Cheryl Hatfield seeks disability and disability insurance benefits ("DIB") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Hatfield's application in an opinion written by an Administrative Law Judge ("ALJ").

Hatfield argues that the ALJ erred because substantial evidence does not support the ALJ's evaluation of Hatfield's subjective pain testimony and finding that Hatfield has the residual functional capacity to perform a range of light work. As detailed below, the ALJ applied the correct legal standards and substantial evidence supports her decision. So the court will **AFFIRM** the SSA's denial of benefits.

I. STATEMENT OF THE CASE

   A.   **Hatfield's disability, as told to the ALJ**

Hatfield was 47 on her alleged disability onset date. (R. 200). She has a high school education and past work experience at her family's seed and feed store. (R. 55–56, 241).

At the ALJ hearing, Hatfield testified that she suffers from back pain and had back surgery in late 2021. (R. 57–58). After the surgery, Hatfield has had several ablations, which have helped with her pain. (R. 59). But Hatfield still has constant back pain that sometimes shoots down her right leg. (R. 59–60). Hatfield takes Tramadol to help manage her pain. (R. 60). Without her medication, Hatfield's pain is somewhere between a 6 and 7 out of 10, but with her medication the pain is about a 5 out of 10. (*Id.*). Hatfield also testified that she had recently begun to suffer from abdominal pain and experience unexplained weight loss. (R. 60–61). Hatfield takes Zofran and Hydrocodone to treat this condition. (R. 61).

Hatfield is married, and lives with her husband and three children. (R. 50–51). Hatfield used to work at her family's seed and feed store but stopped working around the time she had her back surgery. (R. 51–52). On a typical day, Hatfield picks up around the house, though she must take frequent breaks. (R. 61). Hatfield also watches a lot of Hallmark movies, reads, sits out on her porch, and walks in the backyard to pet and feed her dogs. (R. 62). Hatfield say that she can sit for 30 to 45 minutes at a time before needing to walk around and stretch. (R. 62–63). And Hatfield brings a pillow with her everywhere to give her back a cushion. (*Id.*). Hatfield can also stand for only 30 to 45 minutes at a time and needs to be constantly moving to stay comfortable. (R. 63–64). Plus, Hatfield says she typically needs to lie down three times a day between 8:00 AM and 5:00 PM for around an hour at a time. (R. 65–66).

### B.   Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test ||| 
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |

| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
|---|---|---|
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| *Determine Residual Functional Capacity* | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5).

As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

### C. Hatfield's Application and the ALJ's Decision

The SSA reviews applications for benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Hatfield applied for DIB and a period of disability in December 2021 claiming that she could not work because she suffers from a back injury, spondylolisthesis, spinal stenosis, and degenerative disc disease. (R. 240). After receiving an initial denial in November 2022, Hatfield requested an ALJ hearing, which was held in April 2024. The ALJ ultimately issued an opinion denying Hatfield's claims in May 2024. (R. 10–18).

At Step 1, the ALJ determined that Hatfield was not engaged in substantial gainful activity and thus her claims would progress to Step 2.

At Step 2, the ALJ determined Hatfield suffered from the following severe impairments: lumbar spondylosis and obesity.

At Step 3, the ALJ found that none of Hatfield's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. So the ALJ next had to determine Hatfield's residual functional capacity.

The ALJ determined that Hatfield had the residual functional capacity to perform a range of light work with these added limitations:

- Hatfield cannot climb ladders, ropes, or scaffolds.

- Hatfield can occasionally climb ramps and stairs; stoop; kneel; crouch; and crawl.

- Hatfield can frequently balance.

- Hatfield must avoid concentrated exposure to temperature extremes and vibration.

- Hatfield must avoid even moderate exposure to unprotected heights and moving machinery.

At Step 4, the ALJ found that Hatfield could not perform her past relevant work. At Step 5, the ALJ determined that Hatfield could perform jobs, such as routing clerk, office helper, and collator operator, that exist

in significant numbers in the national economy and thus Hatfield was not disabled under the Social Security Act.

Hatfield requested an Appeals Council review of the ALJ's decision. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II.   STANDARD OF REVIEW

This court's role in reviewing claims brought under the Social Security Act is narrow. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III.   LEGAL ANALYSIS

Hatfield argues that substantial evidence does not support the ALJ's evaluation of Hatfield's subjective pain testimony and finding that Hatfield can perform a reduced range of light work. The SSA's regulations define light work as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 CFR § 404.1567(b). Even so, "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with pushing and pulling of arm or leg controls." *Id.*

Hatfield says the ALJ erred in determining that she can perform a range of light work because she failed to properly account for medical

evidence that could reasonably be expected to produce the symptoms and limitations Hatfield described at the ALJ hearing. An ALJ must apply the "two-step" pain standard to subjective testimony regarding pain and other symptoms. Under this standard, the claimant must first present "evidence of an underlying medical condition." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If she does, the claimant must then either: (a) present "objective medical evidence confirming the severity of the alleged pain," or (b) show "that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *See id.* This court "will not disturb a clearly articulated credibility finding supported by substantial evidence." *Mitchell v. Comm'r Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

At the ALJ hearing, Hatfield testified that she believed her back pain prevented her from working. (R. 56). While Hatfield thought surgery would heal her back pain, she said that she was in even more pain after her back surgery. (*Id.*). Hatfield also said that her back pain is unbearable and that she cannot do anything without painkillers or nerve ablations. (R. 57). Hatfield then said that her back pain is constant and shoots down her right leg. (R. 59). According to Hatfield, she must take frequent breaks during the day and lie down for around an hour two to three times per day for pain management. (R. 61, 65–66). Hatfield can also only sit or stand for 30 to 45 minutes at a time and lift and carry around 15 to 20 pounds. (R. 62–63).

The ALJ found that Hatfield's medically determinable impairments could reasonably be expected to cause these alleged symptoms. (R. 14). But the ALJ determined that Hatfield's statements about the intensity, persistence, and limiting effects of her symptoms weren't entirely consistent with the record evidence. (*Id.*). Thus, despite Hatfield's impairments, the ALJ found that she could perform a reduced range of light work at a sustained rate. As explained below, the ALJ adequately supported her credibility determination and residual functional capacity assessment by pointing to Hatfield's objective medical records, treatment history, and the medical opinion evidence in the record.

    1.    *Objective medical evidence*: Hatfield asserts that the ALJ failed to properly evaluate her treatment notes and the objective medical evidence because she discounted, minimized, or overlooked medical records that showed that Hatfield suffers from debilitating back pain. As Hatfield notes, her medical records show that she underwent multiple injections in 2021 that provided her with little to no relief. (R. 387, 395, 414, 436, 438, 476, 482, 486). And a June 2021 MRI showed a small paracentral L5-S1 disc protrusion, degenerative disc disease with diffuse disc protrusion at L4-5 with associated moderate stenosis of the right L4-5 neural foramen, and degenerative disc disease with borderline spinal stenosis and mild to moderate bilateral neural foraminal narrowing at L3-4. (R. 413). Because the injections failed to improve Hatfield's spondylolisthesis, she underwent back surgery in November 2021, which involved an open reduction and internal fixation of L3-4 spondylolisthesis and an extreme lateral interbody fusion. (R. 329).

    Around two months after her surgery, Hatfield reported that she still suffered from back and leg pain and that her pain was exacerbated by sitting, lifting, driving, bending forward, and overhead activity. (R. 357). But her pain was relieved by applying ice / heat and often changing positions. (*Id.*). Hatfield explained that she still experienced radiating back pain at a 7/10 on the pain scale. (*Id.*). And Hatfield said that she could only sit or stand comfortably for less than 30 minutes at a time and that she needed to lie down two times a day for her pain. (*Id.*).

    In March 2022, Hatfield reported that while her back pain was better, her right leg pain was increasing. (R. 426). Thus, Hatfield had more epidural steroid injections. (R. 465, 471, 622, 628). In May 2022, Hatfield reported experiencing 80 to 90% relief for two weeks but said that her pain was slowly returning. (R. 460). In June 2022, Hatfield reported experiencing 100% relief for two days. (R. 454). Hatfield underwent an ablation in July 2022. (R. 458). A month later, Hatfield said that with her medication she was doing 85 to 90% better. (R. 596). And in November 2022, Hatfield felt like her ablation was "holding strong." (R. 645).

But in January 2023, Hatfield reported increased pain that was aggravated by standing, sitting, lifting, and bending forward and backward. (R. 774). So Hatfield underwent another ablation on January 19, 2023. (R. 772). Though Hatfield reported that the ablation helped her leg pain significantly, she said that she was still having a lot of bilateral thoracic pain and bilateral lower back pain. (R. 1226). And x-ray imaging noted the fusion at L3-4 but significant loss of disc height at L4-5. (R. 1228). About a week later, Hatfield explained that she felt that her injections had really helped and denied having any significant leg pain. (R. 1132). But Hatfield said that she was still having back pain. (*Id.*).

X-rays of Hatfield's lumbar spine showed solid fusion at L3-4, but disc space collapse at L4-5 and L5-S1. (R. 1130). And a review of previous MRIs of Hatfield's lumbar spine showed really nice restoration of Hatfield's height at L3-4 with great indirect decompression of her stenosis. (*Id.*). But it also showed small fluid collection, some disc bulging at L4-5, and facet changes at L2-3. (*Id.*).

In April 2023, Hatfield reported that she had started to have some right lower back pain to her right buttock. (R. 757). And in June 2023 Hatfield continued to complain of bilateral lower back pain. (R. 874). Though Hatfield noted that she thought tramadol and the ablations helped her pain. (*Id.*). At that time, Hatfield received 5 trigger point injections. (R. 876). Around two months later, she had another ablation. (R. 872). After this ablation, Hatfield reported 50 to 60% relief and said that her pain was tolerable. (R. 868). But she also noted that her pain was worse with standing, lifting, and bending forward. (*Id.*).

During an October 13, 2023, follow-up, Hatfield said that the ablation had provided her with pretty significant relief. (R. 1161). But in December 2023, Hatfield rated her pain as 7/10 on the pain scale and described it as a constant sharp, shooting, aching, throbbing pain. (R. 1151). Though Hatfield added that the ablation was "working wonders for her" and that the Tramadol alleviated her pain. (*Id.*). During that doctor's visit, Hatfield received four trigger point injections. (R. 1153).

8

Some of the evidence that Hatfield cites supports her testimony that she suffers from debilitating back pain that prevents her from working. But the ALJ acknowledged that Hatfield underwent back surgery, was prescribed pain medication, and had several epidural steroid injections and ablations. (R. 15). The ALJ also considered the MRI findings that showed that Hatfield had some disc bulging at L4-5 and L5-S1 and facet changes at L2-3. (*Id.*). The ALJ, however, determined that other medical records showed that Hatfield's back pain wasn't as severe as she alleged. For example, the ALJ noted that examinations of Hatfield's back revealed normal tone and bulk. (R. 15, 597, 601, 612, 619, 625, 631, 646, 1149, 1153, 1163, 1173, 1192, 1208, 1214, 1228). The ALJ also considered Hatfield's normal range of motion, lack of pedal edema, normal gait, and intact cranial nerves in April 2023. (R. 15, 932). And the ALJ noted that Hatfield consistently reported improvements with medications, injection therapy, and ablations. (R. 15). For example, in February 2024, Hatfield reported benefitting from her most recent ablation and said that "[h]er low back pain is doing well with just the medication." (R. 15, 1148, 1150).

  2. *Opinion evidence*: The ALJ also considered the findings of State agency medical consultants, Krishna Reddy and Robert Haas. (R. 16). As the ALJ noted, Reddy found that Hatfield should be limited to light work and never climb ladders, ropes, or scaffolds. (R. 16, 79–80). The ALJ found Reddy's postural limitations persuasive, except the ALJ concluded that Hatfield was also limited to occasional climbing ramps and stairs, stooping, kneeling, crouching, and crawling. (R. 16). Haas also determined that Hatfield was limited to light work and found that she could only occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. (R. 16, 86–87). Haas then stated that Hatfield could frequently balance but never climb ladders, ropes, or scaffolds. (R. 16, 87). Haas also said that Hatfield should avoid concentrated exposure to extreme cold, extreme heat, vibrations, and hazards. (R. 16, 87). The ALJ found Haas's opinion persuasive because it was supported by reference to Hatfield's medical records and consistent with the records from Hatfield's treatment providers. (R. 16).

—

This court may reverse the ALJ's credibility determinations only if the ALJ "was clearly wrong to discredit" the claimant's subjective pain testimony. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). And the court cannot "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

A reasonable person could review the medical records and opinion evidence discussed above and agree with the ALJ that Hatfield's back pain wasn't as severe as she alleged at the ALJ hearing. A reasonable person could also agree that Hatfield can perform a reduced range of light work. And though Hatfield argues otherwise, the ALJ didn't "cherry pick" the evidence when she evaluated Hatfield's testimony and residual functional capacity. Instead, the ALJ cited to evidence both favorable and unfavorable to Hatfield, including the MRI findings that showed that Hatfield suffered from disc bulging and facet changes. (R. 15). Plus, an ALJ does not need to cite to every piece of evidence so long as this court can tell that she considered the claimant's "medical condition as a whole." *Mitchell*, 771 F.3d at 782. The court is satisfied that the ALJ considered Hatfield's medical condition as a whole and that substantial evidence supports the ALJ's credibility determination and residual functional capacity finding. Thus, the court sees no error in the ALJ's evaluation of Hatfield's testimony or the other record evidence.

### IV. CONCLUSION

For these reasons, the court will **AFFIRM** the SSA's denial of benefits. The court will enter a separate final order that closes this case.

**Done** on February 2, 2026.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE